No. 12-6115

IN THE

**UNITED STATES COURT OF APPEALS**

FOR THE SIXTH CIRCUIT

────────

UNITED STATES OF AMERICA

*Plaintiff-Appellee*

v.

KEAIRUS WILSON

*Defendant-Appellant*

**On Appeal from the United States District Court
for the Middle District of Tennessee (Nashville)**

District Court Case No. 3:10-00163-27
Hon. Aleta A. Trauger, United States District Judge

BRIEF OF DEFENDANT-APPELLANT

KENNETH P. TABLEMAN

KENNETH P. TABLEMAN, P.C.
Attorney for Appellant
161 Ottawa Avenue, N.W.,  Suite 404
Grand Rapids, Michigan 49503-2701
(616) 233-0455

*ORAL ARGUMENT REQUESTED*

## TABLE OF CONTENTS

Page No.

TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES. . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.. . 2

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    I.    THERE WAS NOT SUFFICIENT EVIDENCE TO SUPPORT
    WILSON'S CONVICTION OF THE VICAR COUNTS
    BECAUSE THERE WAS NO SHOWING THAT WILSON
    MURDERED ALEXANDRA FRANKLIN AND MICHAEL
    GOINS "FOR THE PURPOSE OF GAINING ENTRANCE TO
    OR MAINTAINING OR INCREASING POSITION IN AN
    ENTERPRISE ENGAGED IN RACKETEERING
    ACTIVITY". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        1. The meaning of the purpose requirement. . . . . . . . . . . . . . . . . . 22

        2. The Alexandra Franklin murder did not satisfy the purpose
        requirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        3. The Michael Goins murder did not satisfy the purpose
        requirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

II.    THE DISTRICT COURT ERRED WHEN IT FAILED TO
       INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY
       AGREE ABOUT WHICH CRIME OR CRIMES OF
       VIOLENCE WILSON CONSPIRED TO COMMIT IN ORDER
       TO FIND HIM GUILTY ON COUNT 27, CONSPIRACY TO
       COMMIT AN OFFENSE UNDER
       18 U.S.C. § 924(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

III.   THE DISTRICT COURT ERRED WHEN IT FAILED TO
       INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY FIND
       WILSON GUILTY OF THE TWO CRIMES THAT FORMED THE
       TWO-OR-MORE ACTS OF RACKETEERING ACTIVITY
       UNDERLYING THE CHARGE OF CONSPIRACY TO VIOLATE
       THE RACKETEER-INFLUENCED AND CORRUPT
       ORGANIZATIONS CHARGE CONTAINED IN COUNT 1. . . . . .  32

IV.    THE DISTRICT COURT ERRED WHEN IT ENTERED
       SENTENCES AGAINST WILSON FOR HIS CONVICTIONS FOR
       CARRYING A FIREARM IN FURTHERANCE OF THE TWO
       MURDERS AND USING A FIREARM TO MURDER A PERSON
       IN CONNECTION WITH THE TWO MURDERS.  THE ERROR
       VIOLATED WILSON'S RIGHTS UNDER THE DOUBLE
       JEOPARDY CLAUSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

V.     IF THE COURT REVERSES WILSON'S CONVICTIONS ON
       COUNTS 2, 3, 4, 6, 7, 8, AND 27, BUT NOT COUNT 1, THE
       COURT SHOULD VACATE WILSON'S SENTENCE ON COUNT 1
       AND REMAND HIS CASE FOR RESENTENCING.. . . . . . . . . .  38

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

ADDENDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

## TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

**Cases**

*Ball v. United States*, 470 U.S. 856 (1985)............................... 37

*Blockburger v. United States*, 284 U.S. 299 (1932)....................... 37

*Boyle v. United States*, 556 U.S. 938 (2009)............................. 22

*Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181 (6th Cir. 1994)......... 1

*Jackson v. Virginia*, 443 U.S. 307 (1979)................................ 20

*Johnson v. Louisiana*, 406 U.S. 356 (1972)............................. 30

*Ohio v. Johnson*, 467 U.S. 493 (1984)................................. 36

*Richardson v. United States*, 526 U.S. 813 (1999)............... 30, 31, 33, 35

*United States v. Applins*, 637 F.3d 59 (2d Cir. 2011)...................... 35

*United States v. Banks*, 514 F.3d 959 (9th Cir. 2008). .................. passim

*United States v. Campbell*, 168 F.3d 263 (6th Cir. 1999). ................. 39

*United States v. Catalan-Roman*, 585 F.3d 453 (1st Cir. 2009)............... 38

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992). ................ 23

*United States v. DeSilva*, 505 F.3d 711 (7th Cir. 2007).................... 26

*United States v. Dimora*, 829 F.Supp.2d 574 (N.D. Ohio 2011). ............ 35

*United States v. Driver*, 535 F.3d 424 (6th Cir. 2008)..................... 34

*United States v. Dudeck*, 657 F.3d 424 (6th Cir. 2011). ................ 36, 37

*United States v. Ehle*, 640 F.3d 689 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Fiander*, 547 F.3d 1036 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . 34

*United States v. Flores*, 572 F.3d 1254 (11th Cir. 2009). . . . . . . . . . . . . . . . . . 20

*United States v. Flynn*, 87 F.3d 996 (8th Cir. 1996). . . . . . . . . . . . . . . . . . . 33, 34

*United States v. Gray*, 692 F.3d 514 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Hart*, 635 F.3d 850 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Heileman*, 377 Fed. Appx. 157 (3rd Cir. 2010). . . . . . . . . . . . . 26

*United States v. Koubriti*, 509 F.3d 746 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . 36

*United States v. Olano*, 507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . . . 29, 32

*United States v. Owusu*, 199 F.3d 329 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . 20

*United States v. Salter*, 346 F.2d 509 (6th Cir. 1965). . . . . . . . . . . . . . . . . . . . . 24

*United States v. Smith*, 413 F.3d 1253 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . 26

*United States v. Snow*, 507 F.2d 22 (7th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Vannerson*, 786 F.2d 221 (6th Cir. 1986). . . . . . . . . . . . . . . . . 20

*United States v. Williams*, 952 F.2d 1504 (6th Cir. 1991). . . . . . . . . . . . . . . 29, 32

**Other**
Fed. R. Crim. P. 52(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32

Hon. Richard A. Posner, *The Federal Courts: Challenge and Reform*
(Harvard Printing Press 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* (Thomson/West 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sixth Circuit Rule 30(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Sixth Circuit Rule 32(a)(7)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

U.S. Const. amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

U.S. Const. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

USSG § 2E1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**Statutes**

18 U.S.C. § 924. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

18 U.S.C. § 1519. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

18 U.S.C. § 1959. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 1961. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 34

18 U.S.C. § 1962. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

18 U.S.C. § 2422. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 38

21 U.S.C. § 848. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATEMENT REGARDING ORAL ARGUMENT

Keairus Wilson ("Wilson") requests oral argument. Oral argument will help the Court justly decide this criminal appeal which follows a three-week jury trial. Counsel at oral argument can help the Court clarify the issues and respond to questions, and help the Court better understand the case. Oral argument will provide information and perspective not found in the briefs. Antonin Scalia & Bryan A. Gardner, *Making Your Case: The Art of Persuading Judges*, pp. 139–40 (Thomson/West 2008).

The benefit to the Court of the relatively modest time allotted for oral argument far outweighs the cost in time and judicial resources. "Oral argument . . . can convey ideas better than cold print can. It can supplement and clarify arguments that are not adequately set forth in briefs; it can rivet attention on matters the reader may have passed over too lightly. . ." *Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181, 185–86 (6th Cir. 1994) (Wellford, J., *dissenting*) (citation omitted). "Although the average quality of oral argument in federal courts . . . is not high, the value of oral argument to judges is very high." Hon. Richard A. Posner, *The Federal Courts: Challenge and Reform*, pp. 160–61 (Harvard University Press 1996).

1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Wilson was found guilty by a district court jury of violating various federal criminal statutes including two counts of murder in aid of racketeering and related firearms charges.

The Court has jurisdiction of this direct appeal under 28 U.S.C. § 1291, which gives the Courts of Appeals jurisdiction over appeals from final judgments of the district courts.  In addition, 18 U.S.C. § 3742 gives the Court jurisdiction over an "otherwise final sentence."  The district court had jurisdiction over the case because it concerned violations of laws of the United States.  18 U.S.C. § 3231.

## STATEMENT OF THE ISSUES

I.      WAS THERE SUFFICIENT EVIDENCE TO SUPPORT
        WILSON'S CONVICTIONS OF TWO COUNTS OF VICAR
        WHERE THERE WAS NO SHOWING THAT WILSON
        MURDERED ALEXANDRA FRANKLIN AND MICHAEL
        GOINS "FOR THE PURPOSE OF GAINING ENTRANCE TO
        OR MAINTAINING OR INCREASING POSITION IN AN
        ENTERPRISE ENGAGED IN RACKETEERING
        ACTIVITY"?

II.     DID THE DISTRICT COURT ERR WHEN IT FAILED TO
        INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY
        AGREE ABOUT WHICH CRIME OR CRIMES OF
        VIOLENCE WILSON CONSPIRED TO COMMIT IN ORDER
        TO FIND HIM GUILTY ON COUNT 27, CONSPIRACY TO
        COMMIT AN OFFENSE UNDER 18 U.S.C. § 924(c)?

III.    DID THE DISTRICT COURT ERR WHEN IT FAILED TO
        INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY
        FIND WILSON GUILTY OF THE TWO CRIMES THAT
        FORM THE TWO-OR-MORE ACTS OF RACKETEERING
        ACTIVITY REQUIRED AS ELEMENTS OF THE CHARGE
        OF CONSPIRACY TO VIOLATE THE RACKETEER-
        INFLUENCED AND CORRUPT ORGANIZATIONS
        CHARGE CONTAINED IN COUNT 1?

IV.     DID THE DISTRICT COURT VIOLATE WILSON'S RIGHTS
        UNDER THE DOUBLE-JEOPARDY CLAUSE WHEN IT
        ENTERED SENTENCES AGAINST HIM FOR BOTH
        CARRYING A FIREARM IN FURTHERANCE OF TWO
        MURDERS AND USING A FIREARM TO MURDER A
        PERSON IN CONNECTION WITH THE TWO MURDERS?

V.      SHOULD THE COURT VACATE WILSON'S SENTENCE
        ON COUNT 1 AND REMAND THE CASE FOR
        RESENTENCING IF THE COURT REVERSES HIS

CONVICTIONS ON THE OTHER COUNTS?

## INTRODUCTION

Wilson was a member of the Bloods gang in Nashville, Tennessee. He was charged with conspiracy "to conduct and participate, directly and indirectly, in the conduct of the affairs of [a criminal enterprise] through a pattern of racketeering activity" and with crimes in furtherance of the racketeering activity.

The jury considered multiple charges against Wilson arising from two murders and a shooting. They acquitted him of a count arising from the shooting but convicted him of the murder-related charges. Wilson says that there was not enough evidence to show that the murders were done in aid or furtherance of racketeering. If Wilson murdered anyone, the motivation for the murders was personal and not related to racketeering or to maintaining or increasing Wilson's position in the Bloods gang.

The Court will need to examine the jury instructions on Count 1, conspiracy to violate the Racketeer Influenced and Corrupt Organization statute (RICO), and Count 27, conspiracy to use and carry firearms during and in relation to crimes of violence, to decide whether the instructions improperly permitted the jury to return a non-unanimous verdict. Wilson says that the instructions allowed the jury to find him guilty without unanimously agreeing on the specific crimes involved in the charges.

Finally, Wilson was sentenced twice for the same conduct relating to his alleged use of firearms.  He says this violated his constitutional protection against double jeopardy.

If the Court affirms Wilson's conviction on Count 1, Conspiracy to violate RICO, but vacates his other convictions, it should vacate his sentence on Count 1 and remand his case for resentencing on Count 1.

STATEMENT OF THE CASE

In a 63-page, 28-Count Second Superseding Indictment, the government charged Wilson and ten other people with an assortment of violations of federal law.  Wilson was charged in Counts 1 through 8, and 27.  Count 1 charged conspiracy to participate in racketeering activity, based on the actions of the Bloods gang in Nashville, Tennessee.  Count 1 alleged 19 overt acts involving robbery, extortion, narcotics trafficking, murder, and other crimes, and that each defendant agreed that a conspirator would commit at least two acts of racketeering activity as part of the enterprise.  (R. 1147, Second Superseding Indictment, pp. 1–7) (Page ID# 3359–3365).

Count 2 charged that Wilson murdered Michael Goins on June 14, 2008 for the purpose of maintaining and increasing his position in the Bloods gang, an enterprise engaged in racketeering.  (*Id*. at 36) (Page ID# 3394).  In Count 3, he

6

was charged with using and carrying a firearm in connection with Count 2.  (*Id*. at 37) (Page ID# 3395).  Count 4 alleged that he murdered Goins while committing the crime alleged in Count 3.  (*Id*. at 38) (Page ID# 3396).  Count 5 alleged that Wilson and Kenneth Gaddie carried a firearm on July 17, 2008, during and in relation to a crime of violence.  (*Id*. at 39) (Page ID# 3397).

Count 6 charged that Wilson, Montez Hall, Cedric Woods ("Lil' Ced"), and others, murdered Alexandra Franklin on July 19, 2008, for the purpose of maintaining and increasing their position in the Bloods gang, an enterprise engaged in racketeering.  (*Id.* at 40) (Page ID# 3398).  Count 7 charged that Wilson, Hall, and Lil' Ced used and carried a firearm during the Franklin murder.  Count 8 charged that they caused the death of a person with the use of a firearm by murdering Franklin.  (*Id*. at 41–42) (Page ID# 3399–3400).

Count 27 charged Wilson and others with conspiracy to use and carry firearms during crimes of violence.  (*Id.* at 61) (Page ID# 3419).

After a three-week jury trial, Wilson was acquitted on Count 5, but convicted on all of the other counts.

The district court denied Wilson's repeated motions for a judgment of acquittal, and sentenced him to serve life in prison on Counts 1, 2, 4, 6, and 8; 20 years on Count 27; 10 years on Count 3, consecutive to the other terms of

imprisonment; and 25 years on Count 7, consecutive to the other terms of imprisonment.  (R. 1880, Judgment) (Page ID# 8943–8949).

Wilson appealed.  (R. 1888, Notice of Appeal) (Page ID# 8990).

## STATEMENT OF FACTS

Wilson was tried with Rondarius Williamson who was also charged in Counts 1 and 27.  Williamson was charged with another shooting and another murder in which Wilson was not involved.  *See* R. 1147, Second Superseding Indictment, Counts 1, 10, 11, 12, 13, and 27) (Page ID# 3359–3405, 3419).

The government's proofs sprawled over several years.  Using cooperating co-defendants and other witnesses, the government proved the existence of a street gang known as the Bloods in Nashville, Tennessee.  The Bloods got into fights with rival gangs, including the Crips and the Gangster Disciples.  (R. 1898, Trial Tr.,  pp. 186–90, 199–201, Ricky Williams) (Page ID# 9230–9239, 9243–9245); (R. 1900, Trial Tr., pp. 636–45, Cedric Woods) (Page ID# 9673–9682).

The Bloods met from time to time to discuss business related to the gang, disciplinary action against fellow gang members, and plans for actions against rival gangs.  (R. 1899, Trial Tr., pp. 328–32, Ricky Williams) (Page ID# 9372–9376); (R. 1902, Trial Tr., p. 878, Ronnie Clark) (Page ID# 9908).

The Bloods got money from robberies and drug trafficking.  Gang members

8

possessed firearms and occasionally loaned firearms to each other.  (R. 1899, Trial Tr., pp. 380, 416–17, Ricky Williams) (Page ID# 9424, 9461–9462); (R. 1899, Trial Tr., p. 650, Cedric Woods) (Page ID# 9687); (R. 1903, Trial Tr., p. 1202, Adrian Montgomery) (Page ID# 10232).

Gang members could get status in the gang and increase their rank within the gang by participating in violent gang activity.  Some called it "putting in work".  That meant committing acts of violence, often by fighting with and shooting at rival gang members. (R.1898, Trial Tr., pp. 200–01,  Ricky Williams) (Page ID# 9243–9244); (R. 1900, Trial Tr., p. 649, Cedric Woods) (Page ID# 9686); (R. 1902, Trial Tr., pp. 882–83, Ronnie Clark) (Page ID# 9912–9913); (R. 1903, Trial Tr., pp. 1159–60, Adrian Montgomery) (Page ID# 10189–10190); (R. 1905, Trial Tr., pp. 1826–27, Jermaine Tate) (Page ID# 10856–10857).

Ricky Williams, a cooperating co-defendant, described his history with the Bloods.  He joined the East Side Skyline Piru Bloods, a subgroup of the Bloods, through his cousin Robert Osborn.  (R. 1898, Trial Tr., p. 189) (Page ID# 9233).  He said Wilson was also a member of the East Side Skyline Piru Bloods. (*Id*. at 193) (Page ID# 9237).  Wilson's nickname was "Key-Thang" or "Key".  (R. 1899, Trial Tr., p. 323) (Page ID# 9367); (R. 1900, Trial Tr. p. 637) (Page ID# 9674).  Other witnesses also said that Wilson belonged to the Bloods.  (R. 1900, Trial Tr.,

9

p. 637–638, Cedric Woods) (Page ID# 9674–9675); (R. 1903, Trial Tr., pp. 1161–62, Adrian Montgomery) (Page ID# 10191–10192); (R. 1905, Trial Tr., p. 1819, Jermaine Tate) (Page ID# 10849).

Williams identified a letter that he received from Wilson that was mailed on May 3, 2010. It was signed "YOG", which meant young original gangster. (R. 1899, Trial Tr., pp. 463–66) (Page ID# 9507–9510). The Bloods had a hierarchy using ranks ranging from TG, or tiny gangster, all the way up to OOOG, or original gangster. Bloods used hand signs and symbols. One symbol was a five-point star. (R. 1898, Trial Tr. p. 202) (Page ID# 9247).

While he was in the gang, Williams sold Dilaudid. (*Id*. at 227) (Page ID# 9272). He also made money by committing robberies. (*Id*. at 262) (Page ID# 9307).

Williams described a rival gang's killing of a Bloods member, Brandon Muhammad. Williams and others in the gang wanted to kill the people who had killed Muhammad. (*Id*. at 271–72) (Page ID# 9316–9317).

Williams was involved in the shooting of Alexandra Franklin on July 19, 2008. (R. 1899, Trial Tr., p. 360) (Page ID# 9404). According to Williams, he, Antonio Washington, Lil' Ced, Wilson, and Montez Hall, decided to go after the Five Deuce Hoover Gangster Crips, a subset of the Crips gang. They believed that

10

this group had murdered Brandon Muhammad.  (*Id*. at 361–63) (Page ID#
9405–9407).  They drove to an area that the Crips frequented.  They saw Franklin,
a girlfriend of Clarence Shaw, a Crip, drive by and decided to go after her.  Four of
the five people had guns.  (*Id*. at 364) (Page ID# 9408).  Williams heard all of the
guns fire at Franklin when they pulled alongside her.  (*Id*. at 373) (Page ID# 9416).

Williams said that he was a leader of the gang, and admitted that he lied to
police at various times about the Franklin murder.  (R. 1900, Trial Tr., pp. 600,
602) (Page ID# 1900, 1902).

Lil' Ced, another cooperating co-defendant, testified.  Lil' Ced was a
member of the East Side Skyline Piru Bloods.  He considered the gang his family.
(R. 1900, Trial Tr., pp. 636, 643) (Page ID# 9673, 9680).  He had various tattoos,
including two in memory of Brandon Muhammad.  (*Id*. at 648) (Page ID# 9685).

He described an incident where he shot at people whom he thought shot
Muhammad.  (*Id*. at 658) (Page ID# 9695).

On the day that Franklin was shot, Lil' Ced, Williams, Wilson, and Montez
Hall were thinking about getting revenge for the Brandon Muhammad shooting.
(*Id*. at 735) (Page ID# 9765).  They went to look for Clarence Shaw, a Crip known
as Pooh.  They saw Franklin, Shaw's girlfriend.  (*Id*. at 737) (Page ID# 9769).
Wilson wanted to shoot her because Clarence Shaw had talked about killing Lil'

11

Ced's girlfriend.  (*Id*. at 736) (Page ID# 9768); (R. 1899, Trial Tr., pp. 370–71) (Page ID# 9414–9415).  Lil' Ced used a 9mm handgun, Montez Hall used a .40 caliber handgun, and Wilson used a 9mm handgun. Lil' Ced got his gun from Ricky Williams.  He had used the same gun at the Brandon Muhammad shooting. (R. 1901, Trial Tr., pp. 740–41) (Page ID# 9770–9771).  The gun was stored at Antonio Washington's house.  (*Id*. at 741) (Page ID# 9771).

Lil' Ced really didn't want to kill Franklin, but he did.  He threw his gun in the river after the shooting, but heard that the police got Montez Hall's gun.  (*Id*. at 752–753) (Page ID# 9782–9783).  He admitted that he had lied to the police at first about the Franklin murder.  (*Id*. at 756) (Page ID# 9786).  At first he said that Lonnie Newsome was in the car with Antonio Washington.  But, although others said Newsome was in the car, he wasn't.  (*Id*. at 801, 806) (Page ID# 9831, 9836). Wilson was in the car seated behind Williams, who was driving.  (*Id*.)

Clarence Shaw saw men in a red car shoot at his girlfriend, Alexandra Franklin.  He couldn't identify who was in the car, although he knew Wilson because he had gotten in fights with Wilson in jail twice before.  (*Id*. at 843–44) (Page ID# 9873–9874).

Ronnie Clark, a member of the East Side Skyline Piru Bloods gang, knew Wilson  and identified him.  (R. 1902, Trial Tr., p. 875) (Page ID# 9905).  Clark

sold drugs and went to meetings, but did not pay dues.  (*Id*. at 878–79) (Page ID# 9908–9909).

Clark described the Michael Goins shooting on June 14, 2008.  (*Id*. at 898–99) (Page ID# 9928–9929).  He was hanging out with other members of the Bloods, including Wilson, Antonio Washington, and Lonnie Newsome.  He heard gunshots.  He left the area.  He heard that some people may have been beefing with Mike G., but he didn't know anything about it and could not give details. (*Id*. at 905) (Page ID# 9935).  He heard Lonnie Newsome say it was Mike G. from North 2nd before shots were fired.  He didn't see the shooting. (*Id*. at 901) (Page ID# 9937).

Jermaine Tate said he was there, too.  He said that a couple of days before the shooting he was in a car with Lonnie Newsome and Wilson when they saw Mike G.  He heard Newsome tell Wilson not to shoot Goins from his vehicle. (R. 1905, Trial Tr., pp. 1844–45) (Page ID# 10874–10875).  But Tate also testified to the grand jury that Wilson did not see Goins before the day of the murder.  (*Id*. at 1941) (Page ID# 10971).

The night of the murder, Tate was standing on a sidewalk when he heard Newsome tell Wilson that Mike G. pulled up.  He saw Wilson walk up behind Mike G. and shoot him three times in the back.  Wilson dropped the gun

13

and ran.  Another man, Reginald Beavers, also known as Reggie Ba, fired at Goins on the ground. (*Id*. at 1847–48, 1850–51) (Page ID# 10877–10878, 10880–10881). Reggie Ba was not in a gang.  (*Id*. at 1851) (Page ID# 10881).

Tate said that the motive for the crime was a dispute over a girl, not gang issues. (*Id*. at p. 1845) (Page ID# 10875); (R. 1906, Trial Tr., pp. 2026–27) (Page ID# 11056–11057).  There was no testimony that Wilson received any change in his rank in the gang as a result of the Goins murder.

Wilson was not wearing gloves.  (R. 1906, Trial Tr., pp. 2026–27) (Page ID# 11056–11057).  Although the police recovered a fingerprint from a magazine of the murder weapon, it did not match Wilson and police investigators never got a set of Tate's major case prints to examine.  (R. 1907, Trial Tr., pp. 2376, 2382–83, 2390) (Page ID# 11406, 11412–11413, 11420).

Tate picked up Wilson's gun.  Later he swapped it for a .380 caliber gun with Zack.  Tate was cooperating with detectives, and at their request, he later bought Wilson's gun back from Zack.  (R. 1905, Trial Tr., pp. 1852–53, 1871–73) (Page ID# 10882–10883, 10901, 10903).

Tate admitted that while he was cooperating with the police, he filed false police reports, did gun deals, got false documents for Lonnie Newsome, and took part in a false income tax return scam.  He said that he had stolen things from Wal-

14

Mart, and that he had faked his own suicide.  (*Id*. at 1909–11, 1916, 1922–23)
(Page ID# 10939–10941, 10946, 10952–10953).  Although he was working for the
police in July 2008, he did not tell them that he gave Wilson a .38 caliber handgun.
(R. 1906, Trial Tr., p. 2034) (Page ID# 11064).  Newsome told him that Newsome
killed Alexandra Franklin and that Wilson was not there.  (R. 1905, Trial Tr., p.
1952) (Page ID# 10982).

Purez Winstead said that on July 17, 2008, while driving in his car on
Seymour Avenue in Nashville, a man shot at him from another vehicle.  Winstead
claimed that it was Wilson, who he said he knew from school.  He picked Wilson's
picture out of a lineup.  Winstead said that he was a member of the 98 Crips, which
had a beef with the Bloods.  (R. 1902, Trial Tr., pp.1007, 1011, 1017, 1020) (Page
ID# 10036, 10040, 10043).  This testimony formed the basis for the allegations in
Count 5 against Wilson.  The jury, however, found Wilson not guilty.  (R. 1911,
Trial Tr., p. 3096) (Page ID# 12126), (R. 1501, Verdict Form, p. 3) (Page ID#
5384).

Kaylon Cunningham, a former prison guard, sold guns to various members
of the Bloods including Lonnie Newsome, and his cousin Jermaine Tate.  (R. 1904,
Trial Tr., pp. 1400–01, 1404–06) (Page ID# 10430–10431, 10434–10436).

Joedon Bradley, another member of the Skyline Bloods gang, testified that

15

he was under D-Dow.  He knew Wilson and saw Wilson shoot Goins twice.

Jermaine Tate picked up the gun and Reggie Ba ended up with it.  (R. 1906, Trial

Tr., pp. 2083, 2157–58) (Page ID# 11113, 11187–11188).

Members of the Bloods didn't always get along.  On one occasion, Lil' Ced

shot at Ricky Williams.  (R. 1899, Trial Tr., p. 475) (Page ID# 9519).  Lil' Ced had

a falling out with Ricky Williams in 2007 when he refused to give Williams

bullets.  (R. 1901, Trial Tr., pp. 664, 695) (Page ID# 9701, 9732).

Although Williams was involved in many meetings with the Bloods, he did

not see Wilson at them.  (*Id*. at 514) (Page ID# 9558).

Firearms experts from the Tennessee Bureau of Investigation linked

cartridges recovered from a shooting on June 25, 2008, that they identified as the

Legg/Oliver shooting, to a gun that was used in the Alexandra Franklin homicide

and a gun that was used in the Goins homicide.  (R. 1907, Trial Tr., pp. 2252,

2262–63) (Page ID# 11282, 11292–11293).  Bullets recovered from the Purez

Winstead shooting matched a bullet from the Alexandra Franklin shooting and one

from the Legg/Oliver shooting.  (*Id*. at 2267–69) (Page ID# 11297–11299), (*See

also id.* at 2311–22) (Page ID# 11341–11342).

At the close of the government's proofs, both defendants moved for

judgment of acquittal.  The court denied the motions.  (*Id*. at 2343, 2359) (Page

16

ID# 11373, 11387).

Wilson called several witnesses.  One of the them, Julia Hooper, a latent prints examiner for the Metro Nashville Police Department, said prints on 10-print cards for Wilson and Tate did not match a comparable fingerprint collected from the magazine of the Goins murder weapon.  So she requested major case prints, which would include sides of the fingers, joints, and palms.  Wilson's major case prints did not match.  She never received Tate's major case prints.  (R. 1907, Trial Tr., pp. 2376, 2382–83, 2388–2390) (Page ID# 11406, 11412–11413, 11418–11420).

Wilson did not testify.  (*Id*. at 2441–42) (Page ID# 11471–11472).

Williamson called several witnesses.

At the close of all of the proofs, Wilson renewed his motion for judgment of acquittal.  (R. 1908, Trial Tr., p. 2714) (Page ID# 11744).  The trial court denied the motion.  (*Id*. at 2715) (Page ID# 11745).  And it denied his post-verdict motion for judgment of acquittal.  (R. 1787, Memorandum and Order) (Page ID# 8360–8364).

Wilson objected to the district court's instructions on Count 1 because he said it exposed him to a non-unanimous verdict.  The district court overruled the objection.  (*Id*. at 2743) (Page ID# 11773).  He also objected to the district court's

17

answer to a question from the jury about Count 27. They asked if they had to find one – or more than one – crimes to support the charge of conspiring to use a firearm in crimes of violence. Over objection, the court answered one or more. (R. 1911, Trial Tr., pp.3087–88) (Page ID# 12117–12118).

At sentencing there were no objections to the presentence report. The district court sentenced Wilson to serve life in prison on Counts 1, 2, 4, 6, and 8; 20 years on Count 27, to run concurrently with the life sentences; 10 years on Count 3, to run consecutively to the other terms of imprisonment; and 25 years on Count 7, to run consecutively with the other terms of imprisonment. (R. 1951, Sentencing Hearing Tr. pp. 14–15) (Page ID# 12766–12767).

Wilson appealed. (R. 1888, Notice of Appeal) (Page ID# 8990).

## SUMMARY OF THE ARGUMENT

Without proof connecting Wilson's membership in the Bloods to the Alexandra Franklin and Michael Goins murders, there was not sufficient evidence to support Wilson's two convictions for committing violent crimes in aid of racketeering. Just because a person belongs to a gang does not mean that any crime that they commit is for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity.

The district court erred when it failed to instruct the jury that it must

18

unanimously agree about which crime or crimes of violence that Wilson conspired to commit in order to find him guilty of Count 27, the charge of conspiracy to use a firearm in furtherance of a crime of violence.

Similarly, the district court erred when it failed to instruct the jury that it must unanimously find Wilson guilty of the two crimes that were required to meet the two-or-more acts of racketeering activity to support a charge of conspiracy to violate the Racketeering-Influenced and Corrupt Organizations Act in Count 1.

Finally, if the Court affirms Wilson's convictions in Counts 4 and 8, it should vacate his conviction on Counts 3 and 7 because they are lesser included offenses. The double jeopardy clause prohibits a district court from sentencing a person both for a greater offense and a lesser included offense, unless Congress has specifically said that it intends such multiple punishment.

<u>ARGUMENT</u>

I.    THERE WAS NOT SUFFICIENT EVIDENCE TO SUPPORT
      WILSON'S CONVICTION OF THE VICAR COUNTS
      BECAUSE THERE WAS NO SHOWING THAT WILSON
      MURDERED ALEXANDRA FRANKLIN AND MICHAEL
      GOINS "FOR THE PURPOSE OF GAINING ENTRANCE TO
      OR MAINTAINING OR INCREASING POSITION IN AN
      ENTERPRISE ENGAGED IN RACKETEERING ACTIVITY"

A. Standard of Review

When a defendant claims that there was not sufficient evidence to support

19

his conviction, the Court reviews the evidence in the light most favorable to the prosecution, and determines whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). A defendant claiming insufficiency of the evidence bears a very heavy burden. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

The Court does not determine the credibility of witnesses. *United States v. Owusu*, 199 F.3d 329, 341–42 (6th Cir. 2000). And, testimony may support a verdict even if it comes only from "an array of scoundrels, liars, and brigands." *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (citation omitted).

B.  Discussion

Wilson argued that the evidence was insufficient to convict him on Counts 2, 3, 4, 6, 7, 8, and 27 at the close of the government's case, at the close of his proofs, and after the jury returned its verdict. He said that there was not sufficient proof that the shootings were motivated by the racketeering enterprise. (R. 1570, Motion for Judgment of Acquittal) (Page ID# 6185–6207).

In response, the district court said that testimony at trial that gang members achieved status by fighting with and shooting at rival gang members provided sufficient motivation connecting Wilson's acts to the racketeering enterprise. (R.

20

1787, Memorandum and Order) (Page ID# 8360–8364).

But a careful review of the evidence should lead this Court to conclude otherwise.

The main counts against Wilson were Count 2, alleging the murder of Michael Goins in aid of racketeering on June 14, 2008, contrary to 18 U.S.C. § 1959, and Count 6, alleging the murder of Alexandra Franklin in aid of racketeering on July 19, 2008, also contrary to 18 U.S.C. § 1959.

The statute governing violent crimes in aid of racketeering activity, 18 U.S.C. § 1959, ("VICAR") says that:

> Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injry upon, or threatens to commit a crime of violence against any individual in violation of these laws of any State or the United States, or attempts or conspires to do so, shall be punished [according to the sentences that follow].

18 U.S.C. § 1959

This offense has four elements.  First, that the criminal organization exists; second, that the organization is a racketeering enterprise; third, that the defendant committed a violent crime; and fourth, that the defendant acted for the purpose of promoting his position in a racketeering enterprise.  *United States v. Banks*, 514

21

F.3d 959, 964 (9th Cir. 2008).

Racketeering includes a variety of crimes, among them murder and drug distribution. 18 U.S.C. § 1961(1). A racketeering enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009) (describing association-in-fact enterprise).

Here, Wilson was already a member of the Bloods in 2008 when the murders took place. According to Lil' Ced, he and Wilson joined the Bloods at the same time in 2006 (R. 1900, Trial Tr., p. 640) (Page ID# 9677). So the alleged murders had nothing to do with Wilson entering the Bloods.

There was no proof linking the murders to any change in Wilson's position within the Bloods. No one testified that Wilson received a higher rank as a result of the murders. So the alleged murders had nothing to do with increasing Wilson's position within the Bloods.

Nor was there any evidence to show that the purpose of the murders was to maintain Wilson's position within the Bloods.

1. The meaning of the purpose requirement.

Under VICAR, the defendant need not have the sole purpose of maintaining

his position in the enterprise to support conviction, but that the purpose must be more than incidental. *United States v. Banks*, *supra* at 966-68, *United States v. Thai*, 29 F.3d 785, 817 (2d Cir. 1994), *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992).

In *Banks*, the court reversed a conviction under VICAR where the jury was instructed that the purpose of maintaining or increasing position in the enterprise only had to be one or at least one of the purposes of the behavior. *United States v. Banks*, *supra*. The court said that the instruction was too broad:

> To adopt such a broad interpretation would risk extending VICAR to any violent behavior by a gang member under the presumption that such individuals are always motivated, at least in part, by their desire to maintaining their status within the gang; if the reach of the settlement were not cabined in some way, prosecutors might attempt to turn every spontaneous act or threat of violence by a gang member into a VICAR offense. The VICAR statute itself contains no indication that Congress intended it to make gang membership a status offense such that mere membership plus proof of a criminal act would be sufficient to prove a VICAR violation. Otherwise, every traffic altercation or act of domestic violence, when committed by a gang member, could be prosecuted under VICAR as well.

*United States v. Banks*, *supra* at 968.

Other courts have held that the violent acts must be integral, more than merely incidental, and within the defendant's general purpose. *United States v. Banks*, *supra* at 968–69.

23

In *Banks*, the defendant argued that the use of the word "the" in the statute meant that the purpose must be limited to actions done solely or primarily for the purpose of entering a gang, or maintaining or enhancing a position within the gang. The court rejected that argument, relying on cases interpreting the Mann Act as it existed before 1986. That Act prohibited the knowing transport in interstate commerce of any woman or girl "for the purpose of" prostitution or other immoral purposes. Courts interpret this language to mean that the immoral purpose must be a dominant purpose, but not the only purpose. *United States v. Banks*, *supra* at 966.

In fact, this Court held that the Mann Act applied only where the immoral purpose was "one of the [defendant's] dominant purposes." *United States v. Salter*, 346 F.2d 509, 511 (6th Cir. 1965).

Another formulation of the test is that the purpose was "an efficient and compelling purpose." *United States v. Snow*, 507 F.2d 22, 23, n.2 (7th Cir. 1974) (citation omitted).

Here, the government's proofs painted with too broad a brush. The testimony about "putting in work" did not support the convictions. The testimony was general and not tied to a specific time or to Wilson. No one said that Wilson was present when Bloods members talked about "putting in work". To the

contrary, the prosecution's lead witness, Ricky Williams, said Wilson was not at the Bloods meetings.  (R. 1899, Trial Tr., p. 514) (Page ID# 9558).

Tate testified about conversations in 2005, before Wilson joined the Bloods. (R. 1905, Trial Tr., pp. 1826–27) (Page ID# 10856–10857).  Lil' Ced said he got the Bloods rules and regulations from Ricky Williams in 2010, long after the Goins murder in June 2008 and the Franklin murder in July 2008.  (R. 1900, Trial Tr., p. 641) (Page ID# 9628).

Just because some members of the Bloods got in fights or committed crimes of violence does not mean that every fight or act of violence was motivated by their membership in the gang.  The government had to prove more than that Wilson was a member of the Bloods and that he took part in a crime of violence.  It had to show that his acts were integral to his membership in the gang or that a dominant motivation was his membership in the gang.  Merely showing that the acts were incidental to his membership was not enough.  *United States v. Banks*, *supra* at 967–70.

The proofs here failed to support the two VICAR convictions.  There was no proof that either murder had any impact on Wilson's status as a member of the Bloods.

The government's proofs contrast with those held sufficient to support

25

VICAR convictions in other cases. There was no proof that Wilson held a specific position in the gang, such as regional enforcer, so that he had a position-linked duty to respond to threats from other gangs. *United States v. DeSilva*, 505 F.3d 711, 715–16 (7th Cir. 2007) (as regional enforcer defendant was required to respond to threats from other gangs).

There was no proof that, to maintain a position in the Bloods, members were expected to retaliate against acts of violence directed at fellow members, although several Bloods said that fighting other gangs would increase their rank in the Bloods. *United States v. Smith*, 413 F.3d 1253, 1277–78 (10th Cir. 2005).

There was no proof that Wilson knew he was expected to act violently because he was a member of the Bloods, or to enforce gang rules and order of conduct, or to live up to his gang position and nickname. *United States v. Heileman*, 377 Fed. Appx. 157, 205–06 (3rd Cir. 2010) (assault to enforce gang rules); *United States v. Smith*, *supra* at 1278 (Smith was a high-ranking member of the gang and his nickname was "King").

2. The Alexandra Franklin murder did not satisfy the purpose requirement.

While there was proof to show that Wilson was associating with members of the Bloods on the day that Franklin was killed, there was no proof of any gang meeting to plan to kill Franklin. No one said that Wilson would lose his position if

he did not shoot Franklin. The shooting was a departure from a plan to attack the Five Deuce Hoover Gangster Crips in retaliation for the murder of Brandon Muhammad. But, according to Ricky Williams and Lil' Ced, Wilson suggested shooting Franklin because her boyfriend, Clarence Shaw, had talked about killing Lil' Ced's girlfriend. There was no proof that Franklin was a member of the Crips. Thus, her killing was a spontaneous act, and not related to retaliation for Brandon Muhammad's murder.

3. The Michael Goins murder did not satisfy the purpose requirement.

Again, the government presented no proofs of any gang meeting at which members of the gang discussed killing Michael Goins. There was no testimony that Wilson would lose his position in the gang if he didn't kill Michael Goins. The only proof of motive that the government offered was that Wilson and Goins had a dispute over a girl. (R. 1905, Trial Tr., p. 1845, Jermaine Tate) (Page ID# 10875). Moreover, Reggie Ba, the other person who shot Goins, was not affiliated with any gang. (*Id.*, 1851) (Page ID# 10881).

The Court should vacate Wilson's convictions on Counts 2 and 6 because the evidence was not sufficient to support them.

Counts 3, 4, 7, 8, and 27 are predicated on the VICAR violations alleged in Counts 2 and 6. If the VICAR counts fail, then Counts 3, 4, 7, 8, and 27 fail, as

27

well.  Counts 3 (Goins murder) and 7 (Franklin murder) allege the use and carrying of a firearm during and in relation to a crime of violence, contrary to 18 U.S.C. § 924(c).  The crimes of violence alleged in Counts 3 and 7 are the VICAR murders in Counts 2 and 6.  Counts 4 (Goins) and 8 (Franklin) allege murders resulting from the use and carrying of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(j), and the crimes of violence are the VICAR murders set forth in Counts 2 and 6.

Count 27 charges a conspiracy to use and carry firearms during and in relation to crimes of violence, contrary to 18 U.S.C. § 924(c).  But the crimes of violence all relate to VICAR offenses.  Thus, because Count 27 relies on the underlying VICAR offenses, the government's failure to prove those offenses requires this Court to enter a judgment of acquittal on this count.

II.    THE DISTRICT COURT ERRED WHEN IT FAILED
       TO INSTRUCT THE JURY THAT IT MUST
       UNANIMOUSLY AGREE ABOUT WHICH CRIME OR
       CRIMES OF VIOLENCE WILSON CONSPIRED TO
       COMMIT IN ORDER TO FIND HIM GUILTY ON
       COUNT 27, CONSPIRACY TO COMMIT AN
       OFFENSE UNDER 18 U.S.C. § 924(c)

A.  Standard of Review

The Court reviews jury instructions, as a whole, to determine whether they fairly and adequately submit the issues and applicable law to the jury.  *United*

*States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991). Without an objection at trial, the Court will review a jury instruction only for plain error. Fed. R. Crim. P. 52(b), *United States v. Olano*, 507 U.S. 725, 732 (1993).

### B. Discussion

During deliberations, the jury sent a note to the court asking if, in order to find the defendant guilty of Count 27, it had to find "all acts of violence, or one or more listed." (R. 1911, Trial Tr., Vol. 14, p. 3084) (Page ID# 12114). The court told the jury that it need only find one or more acts of violence over defendant's objections. (*Id*. at 3088) (Page ID# 12118). In addition to arguing that the indictment charged conspiracy to commit crimes of violence – not just a crime of violence – Wilson joined his co-defendant's objection that the district court's answer unconstitutionally diminished the government's burden of proof. *Id*.

Although 18 U.S.C. § 924(o) prohibits a person from conspiring "to commit an offense under subsection (c)," Count 27 charged that Wilson and his co-defendant Williamson were two of eleven people that conspired "to knowingly use and carry firearms during and in relation to, and possess firearms in furtherance of *crimes* of violence," (emphasis added) and then further specified that the crimes of violence were conspiracy to participate in a racketeering enterprise, murder in aid of racketeering, and assault with a dangerous weapon in aid of racketeering, as set

forth in the Superseding Indictment. (R. 1147, Second Superseding Indictment, p. 61) (Page ID# 3419).

Although the jury was told it had to return a unanimous verdict, it was not told it had to unanimously decide on which crimes of violence were committed.

Under the Sixth Amendment to the United States Constitution, every criminal defendant has the right to a unanimous jury verdict. *Johnson v. Louisiana*, 406 U.S. 356, 371 (1972) (Powell, J., *concurring*). But a federal jury need not always decide unanimously which of several possible sets of underlying facts make up a particular element. For example, if several possible means may make up the elements of a crime, it is enough for the jury to unanimously conclude that the element was met, even if they are not unanimous about the means used. *Richardson v. United States*, 526 U.S. 813, 817 (1999). In *Richardson*, the Court used the example of robbery by force or threat of force. It is enough that the jury unanimously concludes that there was the use of force or the threat of force, even if the jurors may disagree about whether the defendant used a knife or a gun. *Id*.

However, where a particular kind of fact is the element of the offense, the jury must find that element unanimously. *Id*.

Thus, the jury has to unanimously find which three violations are part of a series of violations required for conviction of engaging in a continuing criminal

enterprise (CCE), contrary to 21 U.S.C. § 848(a). *Id*. at 816–19.

But unanimity is not required for a violation of 18 U.S.C. § 1519 (destruction, alteration, or falsification of records in federal investigations and bankruptcy) because the element is falsification, not the means by which the falsification was achieved. *United States v. Gray*, 692 F.3d 514, 520–21 (6th Cir. 2012). Similarly, unanimity is not required under 18 U.S.C. § 2422(b) (persuading a minor to engage in sexual activities), because the element of the offense is the persuasion of the minor, not the specific type of unlawful sexual activity. *United States v. Hart*, 635 F.3d 850, 855–56 (6th Cir. 2011).

Here, the RICO charge is more akin to CCE than it is to the examples given that do not require unanimity.

To not require jury unanimity on the crimes of violence permits the jury to avoid discussing the specific details of each alleged underlying crime of violence and could cover up disagreement among the jurors about what the defendant did or did not do. In this case, also, there was a risk that the jurors, unless required to return a unanimous verdict and focus on the specific factual details, would not do so and, in the words of *Richardson*, would "simply [conclude] . . . that there where there is smoke there must be fire." *Richardson v. United States*, *supra* at 819.

While Wilson did not object to the instruction when first given to the jury, he

31

objected when there was a discussion in response to the jury's question. This objection should take this case out of the reach of the plain-error doctrine. Even if it does not, however, the Court should conclude that the error permitted a potentially non-unanimous jury verdict, contrary to Wilson's right to a unanimous jury verdict under the Sixth Amendment, and that this error was plain.

III.    THE DISTRICT COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY FIND WILSON GUILTY OF THE TWO CRIMES THAT FORMED THE TWO-OR-MORE ACTS OF RACKETEERING ACTIVITY UNDERLYING THE CHARGE OF CONSPIRACY TO VIOLATE THE RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS CHARGE CONTAINED IN COUNT 1.

A. Standard of Review

The Court reviews jury instructions, as a whole, to determine whether they fairly and adequately submit the issues and applicable law to the jury. *United States v. Williams*, *supra* at 1512. Without an objection at trial, the Court will review a jury instruction only for plain error. Fed. R. Crim. P. 52(b), *United States v. Olano*, *supra* at 732.

B. Discussion

Wilson objected to the court's failure to instruct the jury that it must unanimously find which of the two or more predicate offenses he agreed to commit as part of the RICO conspiracy charged in Count 1, that he conspired to associate

32

with an interstate enterprise and to participate in the affairs of that enterprise through a pattern of racketeering activity. (R. 1908, Trial Tr., pp. 2742–43) (Page ID# 11172–11173).

Instead, the district court instructed the jury that it must find that there was an agreement that some member or members of the conspiracy would commit at least two acts of racketeering. (R. 1514, Jury Instructions, pp. 17–18) (Page ID# 3440–3441).

A defendant is entitled to have the jury unanimously determine the existence of each factual element of an offense. *Richardson v. United States*, *supra* at 817. He is not entitled to a unanimous verdict if several sets of facts could make up the element. For example, if the element is a threat of force, the jury need not decide if the defendant used a knife or a gun, as long as they all agree that the defendant threatened force. *Id*.

What is the nature of the unanimity requirement when a person is charged with conspiracy to violate RICO? When considering instructions given in a RICO charge, one court held that "it would have been desirable if the instructions had in addition stated that the jury must be unanimous as to which acts it believed the defendant had committed." But the court held that the possibility that jurors did not unanimously agree did not violate the Sixth Amendment. *United States v. Flynn*, 87

33

F.3d 996, 1000 (8th Cir. 1996).

But *Flynn* should not control here.  In *Flynn*, the defendant did not challenge the jury instructions either at trial or on direct appeal.  *Id*. at 999.  The jury was told that it had to be unanimous in its decision that Flynn committed a predicate act, and that it must unanimously agree that he committed at least two predicate acts.  *Id*. at 1000.  The indictment charged Flynn with three specific predicate acts. Finally, *Flynn* was decided before *Richardson*.

An agreement to commit two or more predicate offenses is an element of the crime of conspiracy to participate in the affairs of an enterprise through a pattern of racketeering activity.  *See* 18 U.S.C. §§ 1961(1) and (5), 1962(d).  But unlike a RICO charge, a RICO conspiracy does not require proof that the defendant committed two predicate acts or agreed to commit two predicate acts.  It is enough that the defendant agreed that someone would commit the two predicate acts. *United States v. Driver*, 535 F.3d 424, 422 (6th Cir. 2008), *United States v. Fiander*, 547 F.3d 1036 (9th Cir. 2008).

Here, Count 1 alleged 19 different crimes that allegedly were predicate offenses for the conspiracy to engage in racketeering.  By treating these alleged crimes only as alternative means, the jury could avoid discussing the specific factual details of each predicate violation.  And the wide-ranging proofs of various acts

34

committed by Wilson and others aggravated the risk of the jurors turning their attention away from the specific factual details and returning a verdict finding Wilson guilty without really deciding what he did. *See Richardson v. United States*, *supra* at 819.

And there is nothing about the RICO statute that should leave this Court to conclude that Congress intended to define RICO conspiracy in a way that would permit juries to convict while disagreeing about which two predicate offenses a defendant conspired to commit. *But see United States v. Applins*, 637 F.3d 59, 80–82 (2d Cir. 2011), *United States v. Dimora*, 829 F.Supp.2d 574 (N.D. Ohio 2011) (because a RICO conspiracy does not require an overt act, unanimity as to which acts a defendant agreed to commit is not required).

By treating the predicate offenses as means and not as elements, the district court's instructions erred. The error may have prevented the jury from rendering a unanimous verdict. The Court should reverse Wilson's conviction on Count 1.

IV. THE DISTRICT COURT ERRED WHEN IT ENTERED SENTENCES AGAINST WILSON FOR HIS CONVICTIONS FOR CARRYING A FIREARM IN FURTHERANCE OF THE TWO MURDERS AND USING A FIREARM TO MURDER A PERSON IN CONNECTION WITH THE TWO MURDERS. THE ERROR VIOLATED WILSON'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE.

A.  Standard of Review

The Court reviews claims that a defendant's rights under the Double Jeopardy Clause were violated *de novo* where the issue was raised in the district court. *United States v. Koubriti*, 509 F.3d 746, 748 (6th Cir. 2007).  However, when the claim of error was not raised below, the Court will review it only for plain error. *United States v. Dudeck*, 657 F.3d 424, 427 (6th Cir. 2011).

B.  Discussion

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  Among other things, the Clause protects against multiple punishments for the same offense.  *Ohio v. Johnson*, 467 U.S. 493, 498–99 (1984).

Count 3 alleged that Wilson violated 18 U.S.C. § 924(c) by carrying and using a firearm during a crime of violence on June 14, 2008.  Count 4 alleged that, in the course of and during this violation, he murdered Michael Goins through the use of a firearm.  Count 7 alleged that Wilson violated 18 U.S.C. § 924(c) by carrying and using a firearm during a crime of violence on July 19, 2008.  Count 8 alleged that on July 19, 2008, in the course of committing the violation of 18 U.S.C. § 924(c) set forth in Count 7, Wilson murdered Alexandra Franklin through the use of a firearm.

36

Entering convictions on all four counts violates the Double Jeopardy Clause because there are only two offenses – not four – according to the Supreme Court's Blockburger Test. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). If Congress clearly intended multiple punishments for the same act, the court may impose them, but otherwise multiple punishments for the same act violates the Double Jeopardy Clause. *United States v. Dudeck*, *supra* at 427–28.

Here, the two § 924(c) counts were lesser-included offenses of the use of a firearm during murder counts because each did not require proof of any fact not required for conviction of the more serious offenses. And there is no evidence that Congress intended multiple punishments in this setting. *Ball v. United States*, 470 U.S. 856 (1985).

While the government could properly charge all of these counts, the district court could not properly enter sentences on all of them. *Ball v. United States*, *supra* at 860.

The Court should enter an order remanding the case to the district court with instructions to vacate Wilson's sentences on both § 924(c) convictions. *United*

States v. Catalan-Roman, 585 F.3d 453, 471–72 (1st Cir. 2009); *cf. United States v. Ehle*, 640 F.3d 689, 699 (6th Cir. 2011) (possessing child pornography is a lesser-included offense of receiving the same child pornography, and the court may not convict and punish defendant for both offenses).

IV.    IF THE COURT REVERSES WILSON'S
CONVICTIONS ON COUNTS 2, 3, 4, 6, 7, 8, AND 27,
BUT NOT COUNT 1, THE COURT SHOULD VACATE
WILSON'S SENTENCE ON COUNT 1 AND REMAND
HIS CASE FOR RESENTENCING.

A.  Standard of Review

The Court of Appeals reviews *de novo* the district court's application of the sentencing guidelines to the facts.  18 U.S.C. § 3742(e).

B.  Discussion

If a sentence is imposed in violation of law or as the result of an incorrect application of the sentencing guidelines, then this Court must remand the case for further sentencing proceedings "with such instructions as the court considers appropriate . . ."  18 U.S.C. § 3742(f).

Here, if the Court vacates Wilson's convictions on all counts but Count 1, it should still remand his case for resentencing on Count 1 because the scoring of the sentencing guidelines in Count 1 depends on facts deriving from the vacated convictions.  Wilson's offense level, for example, was set at 43 because of the two

VICAR murders.  (R. __, PSR, ¶¶ 48, 54, 56, 61).  The offense level was increased by two points because of an adjustment for multiple counts of conviction.  (R. __, PSR, ¶¶ 6, 61–62, 65).

Without the murder- and gun-related convictions, however, Wilson's base offense level would start at 19.  *See* USSG § 2E1.1.  (R. __, PSR, ¶ 48).

Here, the Court should issue a general remand, if it remands the case for resentencing.  The basic rule that this Court follows on remands for resentencing under the sentencing guidelines is to permit the district court to review sentencing matters *de novo* unless the remand specifically limits the lower court's inquiry.  *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).

## CONCLUSION

The Court should vacate Wilson's convictions on Counts 2, 3, 4, 6, 7, and 8 because there was not sufficient evidence to support them.  The Court should vacate Wilson's convictions on Counts 1 and 27 because the jury was improperly instructed.  If the Court sustains the convictions on Counts 3, 4, 7, and 8, it should vacate the lesser-included offense convictions for violations of 18 U.S.C. § 924(c) in Counts 3 and 7.  If the Court vacates Wilson's conviction on all but Count 1, it should vacate his sentence on Count 1 and remand the case for a *de*

*novo* resentencing.


Dated: June 28, 2013                    Respectfully submitted,

                                        /s/Kenneth P. Tableman
                                        Kenneth P. Tableman
                                        Kenneth P. Tableman, P.C.
                                        Attorney for Keairus Wilson,
                                        Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

This brief is submitted under Rule 32(a)(7)(B). This brief complies with the type-volume limitations set forth in Rule 32(a)(7)(B). This document contains 9,771 words.

Dated: June 28, 2013                            /s/Kenneth P. Tableman
                                                Kenneth P. Tableman

## CERTIFICATE OF SERVICE

I certify that on June 28, 2013, I served a copy of the above pleading on:

Ms. Scarlett M. Singleton, Esq.
Assistant United States Attorney
*Attorney for Plaintiff-Appellee*
scarlett.singleton@usdoj.gov

by filing with this Court's CM/EFC system.

                                                /s/Kenneth P. Tableman
                                                Kenneth P. Tableman

41

ADDENDUM DESIGNATING
RELEVANT DISTRICT COURT DOCUMENTS

Keairus Wilson, Defendant-Appellant, as provided by Sixth Circuit Rule 30(b), designates the relevant documents from the electronic record in the district court:

| Docket Entry No. | Document | Page ID# |
|---|---|---|
| R. 1147 | Second Superseding Indictment | 3359 – 3421 |
| R. _____ | Presentence Investigation Report | |
| R. 1570 | Motion for Judgment of Acquittal | 6185 – 6207 |
| R. 1787 | Memorandum and Order | 8360 – 8365 |
| R. 1880 | Judgment | 8943 – 8949 |
| R. 1888 | Notice of Appeal | 8990 |
| R. 1897 | Trial Transcript Volume 1 | 9045 – 9065 |
| R. 1898 | Trial Transcript Volume 2 | 9066 – 9322 |
| R. 1899 | Trial Transcript Volume 3 | 9323 – 9596 |
| R. 1900 | Trial Transcript Volume 5 | 9597 – 9702 |
| R. 1901 | Trial Transcript Volume 7 | 9703 – 9884 |
| R. 1902 | Trial Transcript Volume 8 | 9885 – 10136 |
| R. 1903 | Trial Transcript Volume 9 | 10137 – 10414 |
| R. 1904 | Trial Transcript Volume 10 | 10415 – 10715 |
| R. 1905 | Trial Transcript Volume 11 | 10716 – 11017 |
| R. 1906 | Trial Transcript Volume 12 | 11018 – 11275 |
| R. 1907 | Trial Transcript Volume 13 | 11276 – 11560 |

| R. 1908 | Trial Transcript Volume 14 | 11561 – 11777 |
|---|---|---|
| R. 1909 | Trial Transcript Volume 15 | 11778 – 12072 |
| R. 1910 | Trial Transcript Volume 16 | 12073 – 12110 |
| R. 1911 | Trial Transcript Volume 17 | 12111 – 12132 |
| R. 1912 | Trial Transcript Volume 4 (Sealed) | 12133 – 12139 |
| R. 1913 | Trial Transcript Volume 6 (Sealed) | 12140 – 12146 |
| R. 1916 | Jury Voir Dire | 12150 – 12386 |
| R. 1951 | Sentencing Transcript | 12753 –12770 |